UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DONALD W. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-165-HBG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 and 17-1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 and 19]. Donald W. Moore ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On May 31, 2013, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on February 28, 2013. [Tr. 223-25]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 117]. A hearing was held on October 21, 2015. [Tr. 45-133]. On February 9, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 32-39]. The Appeals Council denied Plaintiff's request for review on April 5, 2017

[Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 25, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: obesity, back issue, left ankle issue, hypertension, right shoulder issue, affective disorder, and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasional pushing and pulling in the lower left extremity. He is limited to no climbing ladders, ropes, or scaffolding and only occasional ramps and stairs. The claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling. The right upper extremity is limited to frequent overhead reaching. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work related decisions and with few, if any, workplace changes. The claimant should have only occasional interaction with the public, coworkers, and supervisors, and should have a sit/stand option every hour for ten minutes.
>
> 6. The claimant is unable to perform past relevant work (20 CFR

404.1565).

7. The claimant was born on August 28, 1972 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2013, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 34-39].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

4

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider (1) Social Security Ruling 96-7p in assessing Plaintiff's credibility, (2) Social Security Ruling 02-1p in assessing the functional effects of

Plaintiff's obesity, and (3) 20 C.F.R. § 404.1527 in assessing the medical opinions of record. [Doc. 17-1 at 12-16]. Because Plaintiff does not develop his argument regarding the ALJ's alleged error in assessing Plaintiff's obesity [*see id.* at 12-15], the Court finds the issue has been waived. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments . . . adverted to in only a perfunctory manner[] are waived."). Therefore, the Court will consider Plaintiff's remaining two arguments in turn.

### A. Credibility Assessment

Plaintiff asserts that "the ALJ selectively relied on portions of the record that discredited Mr. Moore's subjective complaints and failed to adequately consider the objective evidence supporting his symptoms," while also failing to "analyze Mr. Moore's pain." [Doc. 17-1 at 13].

In the disability determination, the ALJ found that Plaintiff's "statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," based on the medical evidence of record and Plaintiff's ability to perform certain daily activities.[1] [Tr. 37-38]. As to the objective medical evidence of record, the ALJ noted Plaintiff's history of back pain, rotator cuff repair, and a steel plate in his ankle. [Tr. 37] (citing Tr. 334-36, 339-44). As to Plaintiff's back, an imagining study from September 2014 of Plaintiff's lumbar spine revealed mild degenerative changes with no presence of a fracture. [Tr. 37, 463]. The following month, further imagining indicated lumbago. [Tr. 37, 538]. Although Plaintiff was referred to physical therapy, he only attended one session. [Tr. 37, 550]. Plaintiff was subsequently diagnosed with lumbosacral radiculitis in October 2015, but exhibited no problems ambulating upon examination.

---

[1] Because Plaintiff only challenges the ALJ's RFC determination as it relates to certain physical impairments and limitations, the Court's analysis is limited to the medical evidence and opinions pertaining to such.

[Tr. 37, 593, 596]. With regard to Plaintiff's shoulder, Plaintiff was diagnosed with shoulder pain in September 2015, at which time imagining of the right shoulder revealed moderate glenohumeral and mild acromioclavicular osteoarthritic change without evidence of bony abnormality. [Tr. 37, 587-90].

The ALJ also discussed a "Function Report" completed by Plaintiff, noting that Plaintiff remained capable of attending to his personal needs, he helps care for his children, he prepares meals and performs some household chores, he can shop for food although he testified he can only walk down two aisles at the grocery store, he can drive, and he watches television. [Tr. 37] (citing Tr. 287-94).

Pursuant to Social Security Ruling 96-7p, once the ALJ concludes that a claimant has an "impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." 1996 WL 374186, at *2 (July 2, 1996). In addition to considering the objective medical evidence of record in assessing the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must also consider other factors, including a claimant's daily activities. *Id.* at 3.

The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. However, the ALJ's finding must be supported by substantial evidence. *Id.* Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

7

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ mischaracterized Plaintiff's ability to perform daily activities while also ignoring "the bulk" of treatment records from Cherokee Health Systems and a lumbar MRI that was performed in October 2014. [Doc. 17-1 at 13-14]. The Court is not persuaded by Plaintiff's contentions. First, as to the objective medical evidence that the ALJ purportedly ignored, Plaintiff does not cite to any specific medical records, or findings therein, from Cherokee Health Systems that undermine the ALJ's RFC determination. Notably, Plaintiff did not establish care until May 2014, over a year after his alleged onset date, and few treatment notes provide any substantive findings regarding Plaintiff's back beyond his subjective complaints of pain and a diagnostic history of lumbago which the ALJ acknowledged. [Tr. 37, 431-41, 446-49]. Moreover, the ALJ's failure to specifically mention Plaintiff's October 2014 MRI, which revealed multilevel degenerative disc disease with possible neural impingement [Tr. 538], is not detrimental to the ALJ's decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[An] ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). The ALJ observed that Plaintiff was diagnosed with lumbosacral radiculitis in October 2015 [Tr. 37],[2] confirming that the ALJ was aware that Plaintiff had a neurological problem in his back. Despite Plaintiff's diagnosis, he maintained normal ambulatory status. [Tr. 37, 593]. The Court also notes that following Plaintiff's MRI, he was consultatively examined by specialist Barret W. Brown, M.D., on referral from Cherokee Health Systems. [Tr. 433, 598-99]. Plaintiff exhibited unremarkable examination findings with the exception of

---

[2] Lumbosacral radiculitis is "inflammation of the spinal nerve roots pertaining to the lumbar vertebrae." *Auxier v. Comm'r of Soc. Sec.*, 34 F. App'x 477, 478 (6th Cir. 2002).

8

tenderness to palpation in dysesthesias upon touching of Plaintiff's lower back. [*Id.*]. Dr. Brown reviewed Plaintiff's MRI results and concluded that the MRI demonstrated "mostly degenerative changes in the low lumbar spine with mild stenosis there[,] which would not explain the anterior thigh or medial thigh symptoms" complaint of by Plaintiff. [Tr. 598-99]. Dr. Brown concluded that "conservative therapy" in the form of physical therapy was the appropriate course of treatment and that Plaintiff was not a candidate for surgery. [Tr. 599]. The Court finds that Plaintiff has not demonstrated that treatment notes from Cherokee Health Systems or the October 2014 MRI conflicts with the RFC assessed by the ALJ.

Second, as to the ALJ's consideration of Plaintiff's daily activities, the ALJ considered Plaintiff's abilities in this regard not to show he is capable of performing full-time work, as asserted by Plaintiff [Doc. 17-1 at 15], but as one factor in concluding that Plaintiff's symptoms were not as severe or as limiting as he alleged [Tr. 37]; *see* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2-3. Plaintiff further argues, however, that the ALJ ignored the difficulties associated with performing some of the activities. For example, although Plaintiff can care for his personal needs, he submits that he must sit down on the bed in order to get dressed, he cannot stand for a long period of time in the shower, and he has to push up against the wall when using the toilet. [Doc. 17-1 at 13] (citing Tr. 288). Plaintiff also contends that although he can prepare meals and do some household chores, he can only prepare simple meals, such as sandwiches, and he has to perform chores at his own pace. [*Id.* at 14] (citing Tr. 289). The Court concludes, however, that the ALJ took into consideration that Plaintiff's physical impairments limited his ability to function, and therefore, restricted him to light work with additional limitations. Plaintiff has not demonstrated how any of the limitations incorporated into his RFC fail to accommodate the functional effects of his impairments. Furthermore, and as stated above, Plaintiff's daily activities

9

was but one factor considered in assessing Plaintiff's RFC.

Accordingly, the Court finds Plaintiff's allegation of error is not well taken.

B.      **Medical Opinions**

Plaintiff also contends that the ALJ did not provide sufficient explanation pursuant to 20 C.F.R. § 404.1527 for the weight assigned to the medical opinions of record, including the opinions of nonexamining state agency physicians Christopher Fletcher, M.D., and Anita Johnson, M.D., consultative examiner Robert Blaine, M.D., and nurse practitioner Shana Beech. [Doc. 17-1 at 16].

As an initial matter, the Court finds that Ms. Beech did not offer an opinion in this case. "Medical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Here, Plaintiff argues that "[t]he ALJ failed to assign weight to Mr. Moore's primary care provider, nurse Practioner Beech . . . at Cherokee Health Systems." [Doc. 17-1 at 16]. Plaintiff states that Ms. Beech ordered Plaintiff's October 2014 MRI and cites to a September 2014 treatment note from Cherokee Health Systems in which Plaintiff reported that his legs were going numb, he was having episodes of urinary incontinence, and he exhibited moderate to marked tenderness of the spine on examination. [*Id.*] (citing Tr. 436-37).

The Court finds that the September 2014 treatment note, as well as ordering an MRI, does not amount to "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis.'" *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (defining "medical opinions") (quoting 20 C.F.R. § 404.1527(a)(2)); *see Pedigo v. Astrue*, No. 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) ("Where treatment records contain only the subjective complaint

10

of the claimant and the diagnosis of a treating physician unaccompanied by any objectively-supported medical opinion as to the limitations imposed by the condition, the ALJ may properly discount them."), *adopted by*, No. 1:09-CV-93, 2010 WL 1408427, at *1 (E.D. Tenn. Apr. 2, 2010).[3] Therefore, the Court finds no error by the ALJ in this regard.

Turning to the medical opinions of record, Plaintiff was consultatively examined by Dr. Blaine on August 20, 2013. [Tr. 405-07]. On examination, Plaintiff exhibited some limited range of motion in his shoulders, hips, and ankles, but had full range of motion in all other joints, including his thoracolumbar spine; he demonstrated full strength throughout; his station, gait, tandem walk, and heel and toe walk were normal; he could squat halfway into the floor, perform a single leg stand, and get on and off the examining table without difficulty; and straight leg raise testing was negative. [Tr. 406]. Dr. Blaine diagnosed back pain, shoulder pain, ankle pain, and high blood pressure. [*Id.*]. He opined that in an eight-hour workday Plaintiff could stand or walk for four hours and sit for eight hours, and he could lift and carry up to 10 pounds frequently and up to 40 or 50 pounds infrequently. [*Id.*].

With regard to the nonexamining state agency physicians, Dr. Fletcher reviewed the record on September 12, 2013, at the initial level of the agency's determination and opined that Plaintiff could perform the following activities in an eight-hour workday: he could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for four hours and

---

[3] While Plaintiff suggests that he was examined by Ms. Beech when he presented to Cherokee Health Systems in September 2014, the treatment note is not signed, nor is there any indication therein of who examined Plaintiff. [Tr. 435-37]. In fact, Ms. Beech's name does not appear on any treatment note from Cherokee Health Systems. However, the medical record for the MRI, which was performed at Fort Sanders Regional Medical Center, does identify Ms. Beech as the medical source who ordered the imaging study. [Tr. 460-61]. Regardless of who examed Plaintiff in September 2014, the treatment note does not constitute a medical opinion.

sit for six hours; he could push or pull frequently with his left lower extremity; and he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders, ropes, or scaffolds. [Tr. 141-42]. At the reconsideration level, on April 2, 2014, Dr. Johnson assessed the same limitations as Dr. Fletcher except that Dr. Johnson concluded that Plaintiff could stand and/or walk for six hours instead. [Tr. 157-58].

In the disability decision, the ALJ considered the forgoing opinions and concluded that the opinions from the nonexamining state agency physicians were supported by the medical evidence of record and assigned the opinions "significant weight." [Tr. 38]. The ALJ also concluded that Dr. Blaine's opinion was entitled to partial weight, explaining that Plaintiff was more limited in his ability to lift and carry but less limited in how long he can stand and walk than assessed by Dr. Blaine. [*Id.*].

The Court observes that opinions from nontreating and nonexamining medical sources are weighed based on "the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Although an opinion from an examining source is, as a general matter, "given more weight than that from a source who has not performed an examination (a 'nonexamining source')," *Gayheart*, 710 F.3d at 375 (quoting 20 C.F.R. § 404.1502); *but see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (explaining that opinions from one-time consultative examiners are not due any special degree of deference), opinions from nonexamining state agency physicians must also be considered as they are highly qualified medical specialists who are also experts in social security disability evaluation, 20 C.F.R. § 404.1527(e)(2)(i).

Plaintiff argues that the ALJ should have provided further explanation, with citation to medical records, for the weight assigned to each opinion "as required by § 404.1527." [Doc. 17-1 at 16]. To the extent that Plaintiff suggests that the ALJ should have addressed all of the regulatory balancing factors, nothing within 20 C.F.R. § 404.1527(c) mandates that every factor be explicitly addressed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only "consider" the regulatory balancing factors in determining the appropriate weight a medical opinion deserves. 20 C.F.R. § 404.1527(c).

Here, the ALJ's discussion of the evidence prior to weighing the opinions of record provides context as to why Dr. Fletcher's and Dr. Johnson's opinions were found more consistent with and supported by the evidence than that of Dr. Blaine's opinion. The ALJ considered Plaintiff's history of back pain, including treatment notes and imaging studies which indicated degenerative changes, lumbago, and lumbosacral radiculitis. Plaintiff, however, was only recommended conservative treatment through physical therapy and maintained normal ambulatory status despite his diagnosis of lumbosacral radiculitis. Moreover, despite a diagnosis of shoulder pain, imagining of the right shoulder revealed only moderate glenohumeral and mild acromioclavicular osteoarthritic change without evidence of bony abnormality. In addition, the ALJ considered Plaintiff's activities of daily living which likewise did not demonstrate greater restrictions than those incorporated into the RFC. Finally, no medical source of record opined that

Plaintiff had greater limitations beyond an RFC of light work.[4]

Therefore, the Court finds that substantial evidence supports the weight assigned to the medical opinions of record, and Plaintiff's allegation to the contrary is without merit.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Bruce Guyton*
United States Magistrate Judge

---

[4] Although Dr. Blaine's finding that Plaintiff could only walk or stand four hours in an eight-work day is more restrictive than the six hours assessed by the nonexamining state agency physicians, the Court notes that Dr. Blaine's limitation is not inconsistent with an ability to perform light work. *See Icke v. Comm'r of Soc. Sec.*, No. 1:16-CV-01208, 2017 WL 2426246, at *8 (N.D. Ohio May 16, 2017) (holding "that the ALJ appropriately relied on the [vocational expert] testimony that there were a significant number of jobs available for light work with a 4–hour stand/walk limitation."), *adopted by*, No. 1:16 CV 1208, 2017 WL 2418729, at *1 (N.D. Ohio June 2, 2017). While "the *full range of light work* requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday," Social Security Ruling 83–10, 1983 WL 31251, at *6 (1983) (emphasis added), Plaintiff, like the claimant in *Icke*, was limited to a reduced range of light work. [Tr. 37].

14